No. 18,869.

Ernest Joseph Mills *v.* People of the
State of Colorado.
(339 P. [2d] 998)

Decided June 1, 1959.

Mr. Joseph A. Myers, Mr. V. G. Seavy, Jr., for plaintiff in error.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mr. Norman H. Comstock, Special Assistant, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

Plaintiff in error, to whom we will refer as defend-

ant, was convicted of the crime of first degree murder and sentenced to life imprisonment in the state penitentiary. He seeks review on writ of error.

We find it unnecessary to set forth in this opinion the sordid details of the crime of which defendant was convicted. Suffice it to say that the evidence offered by the people was all circumstantial and for that reason the jury was not permitted to consider the death penalty. The record before us raises a clear-cut question, the answer to which requires a reversal of the judgment.

The testimony pertinent to the controlling question, which was admitted over objection of counsel for defendant, related to defendant's refusal to submit to a lie detector test. The witness Brooks testified that he arrested defendant in the State of Missouri. In the course of conversation the witness asked defendant if he would take a "lie detector test." Defendant replied that he would not. This evidence was offered and admitted on the theory that the refusal tended to show a "consciousness of guilt."

Question to be Determined.

■ *In the trial of a criminal case can evidence of the fact the accused refused to submit to a lie detector test be admitted for consideration of the jury?*

The question is answered in the negative. The attorney general with commendable frankness makes the following statement in his brief in connection with the pertinent issue:

"It is next argued that it was error to admit evidence of the fact defendant, upon being asked, refused to take a lie detector test. We have not been able to find any case sustaining the ruling of the trial judge in admitting that testimony. We can find no fault with the cases cited by counsel for defendant."

Numerous decisions of courts of last resort throughout the nation have rejected evidence of this kind. Typical of the opinions which, without exception, have held that admission of such testimony requires reversal, is the case

of *State v. Kolander*, 236 Minn. 209, 52 N.W. (2d) 458, from which we quote the following:

"We have no doubt that the lie detector is valuable in investigative work of law enforcement agencies and may frequently lead to confessions or the discovery of facts which may ultimately lead to the solution of many crimes; but we are in accord with the rule that the lie detector has not yet attained such scientific and psychological accuracy, nor its operators such sureness of interpretation of results shown therefrom, as to justify submission thereof to a jury as evidence of the guilt or innocence of a person accused of a crime.

"The state concedes that the results of a lie-detector test would not be admissible, but contends that it may nevertheless be shown that defendant refused to take such test, since such refusal is evidence of a consciousness of guilt similar to evidence of flight. With this we cannot agree. Much the same proposition was advanced in *People v. Wochnick*, 98 Cal. App. 2d 124, 219 P. 2d 70, supra. In that case, an officer testified that defendant had been told that he had been placed on the lie detector for a test and that there was a violent reaction when he was shown a certain exhibit; and that when he was asked for an explanation of such reaction he stated that he could not explain it. The trial court instructed the jury that it could not consider that portion of the conversation relating to the lie-detector test as indicating whether or not there was any reaction to any technical test. In holding that it was reversible error to admit the evidence, the California court said, 98 Cal. App. 2d 128, 219 P. 2d 72: 'Despite the instruction of the court, the evidence of the partial results of the lie detector test with respect to defendant's reaction upon being shown the murder weapon was indelibly implanted in the minds of the jurors and could not but have had a prejudicial effect.'

"The same is true here. There was no explanation to the jury of the operation or effect of a lie detector. As a

matter of fact, it was not even shown what type of test defendant had refused to submit to. The impact upon the minds of the jurors of a refusal to submit to something which they might well assume would effectively determine guilt or innocence, under these conditions, might well be more devastating than a disclosure of the results of such test, if given after a proper foundation had been laid showing how the apparatus functioned. Where a conviction rests so completely on circumstantial evidence, the erroneous admission of such action on the part of defendant might well be enough to tip the scales against him. We believe that it was prejudicial error to permit such refusal of defendant to submit to the test to be shown."

See also 23 A.L.R. (2) 1306 for additional citations.

As shown by the brief of the attorney general, it is quite apparent to him that no authority sustaining the use of such testimony can be found. It should have been equally apparent to the district attorney at the trial court level that insistence upon the introduction of this testimony would result in a reversal of the judgment in case of a conviction.

All too frequently this court is compelled to reverse judgments of guilt in important criminal cases because of overzealous prosecution. It is the duty of prosecuting officers to guard against the introduction of incompetent evidence. Overprosecution of an accused should not be permitted by the trial court. In the instant case the district attorney insisted at great length upon introduction into evidence of testimony which is uniformly held to be incompetent in an unbroken line of authorities throughout the nation. The trial court erred in departing from the well-established rule. We are afforded no alternative and must reverse the judgment.

Where overzealous prosecution results in the introduction of prejudicial, incompetent evidence, "this Court will be compelled to reverse judgments of guilt; the taxpayers of the several counties will continue to

bear the heavy costs of second trials in murder cases; and ultimate justice will continue to be delayed." *Becksted v. People*, 133 Colo. 72, 292 P. (2d) 189.

The judgment is reversed.

MR. JUSTICE SUTTON not participating.