2008 WY 130

**Phyllis A. DRURY, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–07–0250.**

Supreme Court of Wyoming.

Oct. 23, 2008.

Representing Appellant: Diane Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel; John D. King, Faculty Director, Grant Curry and Jon Aimone, Student Interns, of Defender Aid Program. Argument by Messrs. Aimone and Curry.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Graham M. Smith, Assistant Attorney General. Argument by Mr. Smith.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] Appellant Phyllis A. Drury requests that we overturn her conviction because she claims that a witness inappropriately vouched for the credibility of other witnesses and impermissibly commented on Appellant's credibility during her trial. Appellant also claims that the district court committed reversible error when it failed to suppress statements regarding taped interviews with law enforcement because the tapes of those interviews were destroyed and were not available to the defense at trial. We affirm.

### ISSUES

[¶ 2] 1. Did the district court abuse its discretion when it allowed a law enforcement officer to testify regarding his ability to gauge credibility, behavior he considered indicative of credibility, and his impressions of the credibility of Appellant and other suspects, and when the court denied a subsequent motion for mistrial based on that same testimony?

2. Did the district court abuse its discretion in failing to exclude the testimony of a law enforcement officer regarding his interviews with Appellant and other witnesses even though tapes of those interviews were not provided to Appellant in discovery?

3. Did the district court err when it determined that Appellant's due process rights were not violated although the investigating officer destroyed tapes of interviews with Appellant and various witnesses?

### FACTS

[¶ 3] Appellant worked for a company dealing with collections in medical billing from January to September of 2005. In approximately April of 2005, deposits at the company began to go missing. The problem was not discovered until June when the company reconciled its books. The company, with the help of an accounting firm, spent several months investigating in order to confirm that the problem was internal and identify which specific deposits were missing. The company then used payroll and vacation records to eliminate from suspicion any employees who were not in the office on at least one day when a deposit went missing. Three employees were identified who had been present in the office on every day a deposit disappeared.

[¶ 4] Managers called the three employees who were still under suspicion into individual interviews with law enforcement pres-

ent.[1] The interviews were recorded on audio tape but the recording was unintelligible because of poor sound quality. All of the employees denied involvement in the theft. At the end of the three interviews, the managers asked Appellant to clean off her desk and law enforcement escorted her from the premises.

[¶ 5] Officer Phil Brown investigated the thefts. Officer Brown interviewed nine employees in connection with his investigation. Officer Brown recorded those interviews and used the recordings to prepare his reports but he reused the tapes for other purposes and did not preserve the recordings. Appellant was the last employee Officer Brown interviewed. Officer Brown taped Appellant's interview as well, but both the audio and video tapes ran out approximately halfway through the interview. Officer Brown testified that Appellant confessed and signed a statement after the tape ran out. Appellant's written statement was admitted at trial.

[¶ 6] The State charged Appellant with felony larceny under Wyo. Stat. Ann. § 6–3–402(a)(c)(i) (LexisNexis 2003). The jury found Appellant guilty but the district court deferred its judgment and sentencing until both sides could submit materials related to a mistrial motion the defense brought during Officer Brown's testimony. The district court denied the motion on June 26, 2007, and entered a Judgment and Sentence on August 21, 2007.

## DISCUSSION

*Did the district court abuse its discretion when it allowed a law enforcement officer to testify regarding his ability to gauge credibility, behavior he considered indicative of credibility, and his*

*impressions of the credibility of Appellant and other suspects, and when the court denied a subsequent motion for mistrial based on that same testimony?*

[¶ 7] Appellant contends that the district court committed error *per se* when it permitted testimony regarding Appellant's guilt. However, we recently abandoned the "error *per se*" standard for such testimony. *Large v. State*, 2008 WY 22, ¶ 30, 177 P.3d 807, 816 (Wyo.2008). Since Appellant objected to the testimony at trial, we will review the admission of this testimony for abuse of discretion and determine whether the error, if any, was harmless. *Id.*, 2008 WY 22, ¶ 30, 177 P.3d at 816; W.R.A.P. 9.04.

[¶ 8] We review the denial of a motion for mistrial for an abuse of discretion. *Martin v. State,* 2007 WY 2, ¶ 11, 149 P.3d 707, 710 (Wyo.2007). An abuse of discretion occurs where the district court could not reasonably have concluded as it did. *Thomas v. State*, 2006 WY 34, ¶ 10, 131 P.3d 348, 352 (Wyo.2006). "Granting a mistrial is an extreme and drastic remedy that should be resorted to only in the face of an error so prejudicial that justice could not be served by proceeding with trial." *Warner v. State*, 897 P.2d 472, 474 (Wyo.1995). Appellant has the burden of showing that she was prejudiced by the district court's denial of the motion for mistrial. *Yellowbear v. State*, 2008 WY 4, ¶ 67, 174 P.3d 1270, 1295 (Wyo. 2008).

[¶ 9] The testimony at issue was certainly inappropriate. Officer Brown testified that he had extensive training in interviewing techniques, including training in how to determine if a subject is lying during an interview. The officer also testified as to specific things for which he had been trained to look in making that determination.[2] He then

---

1. The company requested a law enforcement presence at the interviews as a civil standby. The officers did not directly participate in the interviews.

2. Appellant did not object to this testimony, and does not take issue with it on appeal. The State concedes that it elicited this testimony, and seems to find nothing wrong with having a wit-

ness testify to the jury about specific behaviors that would indicate that a person lacks credibility or is lying. We must emphasize that one of the key purposes of a jury is to determine the credibility of each witness based on that jury's common experience with such matters. *See* 89 C.J.S. *Trial* § 677 (2001). Testimony on how to gauge credibility is completely inappropriate, and constitutes an unacceptable invasion of the province of the jury.

made several comments about Appellant's credibility, about his opinion of her guilt, and about the credibility of the other suspects he interviewed during the investigation. At various points in his testimony, the officer made the following statements:

> But they sent me to a specialized school which basically supplied me with an outline [for interviews] that I could work with, an outline that psychologists and hundreds of cops have decided works pretty much all of the time.
>
> . . . .
>
> They didn't really go into the exact questions, but they did have an outline of a certain amount of questions that you should follow in the same—same order that would elicit responses both physically and verbally that would lead the detective to think that the person they're talking to is either being deceptive or is trying to be helpful with the cops. Like a witness or, a, um, somebody that's not guilty could act entirely different than people that have some involvement in the crime.
>
> . . . .
>
> Just in the initial phase what I'm looking for is changes in body behavior that would indicate deception. I'm not really listening to the answers of the questions. I'm watching her body for movement, twitches, anything that is abnormal. You know, I sit there for about half an hour, and I watch what's normal. Then when I start to ask her just slightly stressful questions, and I watch what happens to her body. If I hit a chord during one of my questions, I know that something is up there; and I know that I need to ask more questions in that area. And it also gives me confidence that the person I'm talking to is lying to me.
>
> . . . .
>
> I'm looking for twitching legs, covering the mouth, inappropriate coughing, all of these things that I was taught that would indicate that somebody is trying to hide some-

body [sic]. Witnesses—**all of the other women in this office didn't give me any of that.**

> . . . .
>
> And during that short phone interview [Appellant] **told me some things that were not normal for an innocent person.**
>
> . . . .
>
> Three seconds later she sat down—well, she was sitting down, but she said okay. **So I knew that most normal people that have just been accused of—**
>
> . . . .
>
> The first part of the interview I'm watching body language. What they're saying is not necessarily as important as what their body's saying in regard to the deception or truth.
>
> . . . .
>
> Okay. **In my opinion the nine women that I talked to did not exhibit any—**

(Emphasis added).

[¶ 10] Officer Brown testified as a lay witness. However, it is impermissible for either a lay witness or an expert to vouch for the credibility of another witness, or to comment on the guilt of the accused. *Lopez v. State,* 2004 WY 103, ¶ 22, 98 P.3d 143, 150 (Wyo.2004). The question becomes whether the error [3] requires reversal or whether the error was harmless under W.R.A.P. 9.04.

> We must ascertain whether the error affects any substantial rights of the accused, providing grounds for reversal, or whether it is harmless. The harmless error standard is set out in W.R.A.P. 9.04: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded by the reviewing court." *See also* W.R.Cr.P. 52(a). An error is harmful if there is a reasonable possibility that the verdict might have been more favorable to the defendant had the error never occurred. To demonstrate harmful error, the defendant must show prejudice under "circumstances which

---

**3.** It is difficult to say that the trial court "admitted" this testimony, when the record reflects that everyone involved went to considerable lengths to prevent the witness from testifying improperly. However, since the comments were made in the presence of the jury, we must examine the record to determine if Appellant was prejudiced as a result of the failure of all parties to control this witness.

manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play." *Johnson v. State,* 790 P.2d 231, 232 (Wyo.1990). Under our harmless error analysis, we must judge whether the jury's verdict might have been different but for the witnesses' testimony.

*Wilks v. State,* 2002 WY 100, ¶ 21, 49 P.3d 975, 984 (Wyo.2002). "Among the factors to be considered are the nature and gravity of the error, the prosecutor's duty to do justice and refrain from improper methods, the likely impact on the average juror, the quality of the prosecution's case, and the closeness of the case." *Warner v. State,* 2001 WY 67, ¶ 23, 28 P.3d 21, 29 (Wyo.2001).

[¶ 11] The defense objected to each instance of vouching and of improper opinion as to guilt. The district court initially overruled or ignored those objections but did issue a limiting instruction at the end of Officer Brown's direct testimony. The district court instructed the jury:

> In regard to some of the testimony you heard from this witness, I want you to keep in mind that it is the exclusive province of the jury to determine whether or not a witness is telling the truth. It is not proper for a witness to vouch, as [Defense Counsel] has used that term in this trial, for the credibility of some other witness. And so whatever Officer Brown said about what his perception was about some witness, a witness's veracity or telling the truth or lack of truth, you're to totally disregard his testimony insofar as he's testified along those lines.

[¶ 12] Several of the witness's improper comments came after the district court gave that instruction. A number of those attempts by the witness to insert prejudicial statements were cut off by objection or interrupted by defense counsel. The prosecutor interrupted several of the statements made on direct examination and attempted to redirect testimony into safer waters. It is evident from the record that defense counsel, the prosecutor, and the district court all had difficulty controlling this witness.[4]

[¶ 13] The district court also instructed the jury before deliberations as follows:

> The jury is the sole judge of the credibility of the witnesses, and of the weight to be given to their testimony. You should take into consideration their demeanor upon the witness stand, their apparent intelligence or lack of intelligence, their means of knowledge of the facts, the interest, if any, which any witness may have in the outcome of this trial, the prejudice or motives, or feelings of revenge, if any, which have been shown by the evidence. In so doing, you may take into consideration all of the facts and circumstances in the case and give such weight as you think the same are entitled to, in the light of your experience and knowledge of human affairs.

Another jury instruction read, in pertinent part:

> It is your duty to determine the facts and to determine them from the evidence produced in open court. You are the sole judges of the facts and the credibility of the witnesses and the weight to be given their testimony.
>
> . . . .
>
> The evidence which you are to consider consists of testimony of the witnesses and the exhibits offered and received. The production of evidence in court is governed by rules of law. From time to time it has been my duty as Judge to rule on the admissibility of evidence. You must not concern yourself with the reasons for these rulings. You are not to consider testimony which was ordered stricken.

[¶ 14] In deciding whether Appellant was prejudiced by the district court's admission of the above-quoted testimony and by the

4. At one point, the district court called a recess so that the prosecutor could direct the witness not to discuss Appellant's history with Alcoholics Anonymous, which history the witness used to create a bond with Appellant during the interview. Appellant had apparently confessed to the witness that she spent most of the stolen money on alcohol. Even after strict out-of-court instruction, the witness still managed to slip in a comment when asked whether Appellant gave some of the money to her mother that, "[s]he gave all of it to a different thing. I can't—I was told not to tell you what."

district court's decision to deny the motion for a mistrial, we consider the improper testimony in light of the trial as a whole. *Pendleton v. State*, 2008 WY 36, ¶ 11, 180 P.3d 212, 216 (Wyo.2008). Here, it was evident that the prosecutor and defense counsel both struggled to control this witness. Either the prosecutor or defense counsel interrupted almost every statement Officer Brown made regarding credibility. The prosecution did not emphasize the improper testimony during its examination of the witness or in closing argument. The district court, while at first leaving the prosecutor and defense to wrangle with the witness, eventually sustained several objections to the witness's testimony and offered both a corrective instruction during Officer Brown's testimony, and several final jury instructions in an attempt to mitigate the damage. We consider jury instructions in our analysis and we assume that the jury followed the instructions given by the district court. *Id.* at ¶ 18, 180 P.3d at 218. The district court repeatedly instructed the jury to determine credibility independently and to disregard any improper witness testimony on that subject.

[¶ 15] We also consider the strength of the evidence against Appellant in order to determine whether there is a possibility that the jury could have found differently in the absence of the improper testimony. *Warner*, 2001 WY 67, ¶ 23, 28 P.3d at 29. Employees of the company and an accounting firm testified as to the dates on which deposits were stolen. Payroll and vacation records admitted into evidence showed that only three employees were present on all of the dates on which thefts took place. There was no dispute that the stolen deposits were kept in an unlocked drawer directly behind Appellant's desk. Several employees and Officer Brown testified that Appellant often spoke of her financial difficulties and that she had taken pay advances several times. Officer Brown testified that Appellant confessed to stealing the money and that she provided him with details of her crimes. He testified that Appellant said she initially planned to replace the deposits if the theft were discovered. One of Appellant's supervisors testified that she found blank deposit slips for some of the accounts from which money was stolen in Appellant's pencil drawer and that

there was no business-related reason for Appellant to have deposit slips for any account. The jury had a signed statement by Appellant that was read into the record as follows:

In the matter of Affinity Professional Systems, I realize that my actions have not only hurt financially but also emotionally. I can say I'm sorry, but that still does not change the situation. I made an awful error in judgment that has snowballed out of control before I was able to rectify the situation. There is no reason for my actions other than financial desperation. The opportunity presented itself, and without rational thought I left behind all moral and self-respect. I hurt a lot of people who trusted and respected me, and for that I will always be sorry. I can some—I can someday make good financially, but emotionally I will live with this mistake for life.

[¶ 16] In light of the overwhelming evidence against Appellant, including her own confession, we cannot say that the jury could have found differently in the absence of the improper testimony as to credibility. We have also given weight to the fact that the prosecutor did nothing to increase the prejudicial effect of the vouching testimony. The district court went to great lengths to instruct the jury to disregard Officer Brown's testimony on credibility and to make its own determination as to the credibility of each witness. We find that it would have been quite evident to the jury that the witness was acting inappropriately, and we are confident that the jury would have had no difficulty understanding which portions of the testimony to disregard. We find that Appellant was not prejudiced by the testimony and that the error was harmless. For the same reasons, we find that the district court did not abuse its discretion in denying Appellant's motion for mistrial.

*Did the district court abuse its discretion in failing to exclude the testimony of a law enforcement officer regarding his interviews with Appellant and other witnesses even though tapes of those interviews were not provided to Appellant in discovery?*

Rulings on the admissibility of evidence are within the sound discretion of

the trial court. *Urbigkit v. State,* 2003 WY 57, ¶ 39, 67 P.3d 1207, ¶ 39 (Wyo. 2003). We will not disturb such rulings absent a clear abuse of discretion. *Id.* An abuse of discretion occurs when it is shown the trial court reasonably could not have concluded as it did. *Hannon v. State,* 2004 WY 8, ¶ 13, 84 P.3d 320, ¶ 13 (Wyo. 2004). Factual findings made by a trial court considering a motion to suppress will not be disturbed unless the findings are clearly erroneous. *Meek v. State,* 2002 WY 1, ¶ 8, 37 P.3d 1279, ¶ 8 (Wyo.2002). *O'Boyle v. State,* 2005 WY 83, ¶ 18, 117 P.3d 401, 407 (Wyo.2005).

[¶ 17] Appellant phrases this issue as a question of whether or not the State should have been compelled to produce evidence and whether, failing that, the district court should have suppressed the evidence because the State failed to produce it. However, there does not appear to be a dispute as to whether the tapes of the various interviews were available for production. Appellant admits that production of these recordings was impossible. The United States Court of Appeals for the Tenth Circuit considered this question in *United States v. Gomez,* 191 F.3d 1214 (10th Cir.1999) and determined that the issue was more properly one of due process to be decided under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny. We agree, and will address the issue as one of due process below.

***Did the district court err when it determined that Appellant's due process rights were not violated although the investigating officer destroyed tapes of interviews with Appellant and various witnesses?***

[¶ 18] Appellant contends that her due process rights were violated when Officer Brown destroyed the recordings of Appellant's and other witnesses' interviews. Appellant does not point to any exculpatory value those tapes would have had, but merely contends that the tapes were potentially useful to her defense. Therefore, the standard to be applied is that of *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Under *Youngblood,* Appellant

must show that the State acted in bad faith in destroying the evidence. *Whitney v. State,* 2004 WY 118, ¶ 59, 99 P.3d 457, 477 (Wyo.2004).

[¶ 19] Our inquiry into bad faith under *Youngblood* follows a somewhat circular process. A showing of bad faith is required where an appellant cannot show that the destroyed evidence had exculpatory value that would have been apparent before its destruction. *Id.* However, in order to determine whether the State acted in bad faith in destroying the evidence, we must take into account the State's knowledge of the potentially exculpatory nature of the evidence. *Id.* In this case, Appellant has failed even to allege that the tapes could have had exculpatory value, let alone that Officer Brown should have been aware of that value before he destroyed the tapes. Officer Brown testified that the only information regarding Appellant contained in the tapes of the witnesses was reference to innuendo and speculation that Appellant had committed the crime. Each of the interviewed employees testified at Appellant's trial. Defense counsel did not question any of the witnesses about the substance of the interviews, nor did he ask about the contents of the tapes. Appellant does not allege that Officer Brown's testimony was inaccurate, even with respect to his description of Appellant's interview.

[¶ 20] Our analysis of due process goes to the fundamental fairness of the underlying trial. *Whitney,* 2004 WY 118, ¶ 58, 99 P.3d at 476. Officer Brown testified that he used the tapes to collect information for his reports. Appellant had access to those reports. Appellant also had access to every witness who was the subject of an interview and yet she does not contend that any of the tapes contained anything that would contradict Officer Brown's testimony. There is no evidence that the tapes had any possible exculpatory value, let alone that Officer Brown was aware of any exculpatory value before he destroyed the recordings as part of his routine procedure. Therefore, there was no violation of Appellant's right to the due process of law.

## CONCLUSION

[¶ 21]  The district court did not abuse its discretion when it denied Appellant's motion for a mistrial.  The district court's instructions to the jury were well-designed to mitigate any possible prejudice resulting from improper testimony.  Any error in admitting the testimony was harmless in light of the compelling evidence presented against Appellant.  Appellant also failed to show that her due process rights were violated when tapes of witness interviews were destroyed. There was no dispute as to the content of the tapes, no showing of their having been exculpatory, and Appellant had access to all the witnesses as well as the interviewing officer and his reports of the interviews.  The judgment and sentence of the district court are affirmed.