2011 WY 46

**Monty SULLIVAN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S-10-0099.

Supreme Court of Wyoming.

March 11, 2011.

---

Representing Appellant: Diane Lozano, State Public Defender; Tina N. Olson, Appellate Counsel; and Kirk A. Morgan, Senior Assistant Appellate Counsel. Argument by Mr. Morgan.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage; Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Leda M. Pojman, Senior Assistant Attorney General. Argument by Ms. Pojman.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

HILL, Justice.

[¶ 1] After being found guilty of two counts of first degree sexual abuse of a minor, Monty Sullivan asserts that he was denied the right to a fair trial due to prosecutorial misconduct. We affirm.

## ISSUE

[¶ 2] Sullivan raises one issue before this Court:

> Mr. Sullivan was denied his right to a fair trial due to prosecutorial misconduct which occurred when the prosecutor solicited inappropriate testimony from its witness and informed the jury that Mr. Sullivan did not take a polygraph test.

## FACTS

[¶ 3] In February of 2009, the Wyoming Department of Family Services (DFS) took K.T., a minor child who was then nine years old, to the Child Advocacy Project (CAP) in

Casper, Wyoming, to be interviewed.[1] During the interview, K.T. revealed that on two separate occasions in her grandmother's bedroom, Sullivan attempted to have sex with her but because it was too painful, K.T. stated that Sullivan anally raped her when she was seven and eight years old. K.T. also revealed that Sullivan made her taste his semen, and that there were occasions when Sullivan made her sit on his lap while he watched pornography on the computer. During one specific instance, K.T. recalled that Sullivan was rubbing K.T.'s private area through her clothes.

[¶ 4] The Thermopolis Police Department interviewed Sullivan after learning of the CAP interview with K.T. They informed Sullivan of K.T.'s allegations, which he initially denied. Eventually, Sullivan admitted to law enforcement that he had done to K.T. what she alleged him to have done.

[¶ 5] On February 13, 2009, Sullivan was charged with three counts of sexual abuse of a minor in the first degree in violation of Wyo. Stat. Ann. § 6–2–314(a)(i) (Counts I–III), and one count of sexual abuse of a minor in the second degree, in violation of Wyo. Stat. Ann. § 6–2–315(a)(iv) (Count IV). Counts I and IV were ultimately dismissed, and Sullivan pleaded not guilty at arraignment to Counts II, III, and IV.[2]

[¶ 6] Prior to trial, Sullivan filed a motion in limine to preclude fifteen specific sorts of anticipated prosecutorial misconduct, including vouching for the credibility of a witness and commenting on Sullivan's guilt or his failure to take a lie detector test. The court, after a hearing, granted the motion as to any polygraph evidence. Otherwise, the court denied the motion, stating that if "one of those errors does come up, then we'll deal with it at the time."

[¶ 7] The case went to trial on October 28, 2009. At trial, Chief of Police Mark Nelson testified that after doing a number of "these" cases, the video of K.T.'s interview was "very believable." Chief Nelson also testified that he asked Sullivan about a lie detector test, which elicited a colloquy that included the prosecutor stating to the judge in front of the jury that "one was not taken."

[¶ 8] After two days of trial, the jury returned a guilty verdict on both charges.[3] Sentencing occurred February 18, 2010, wherein the court sentenced Sullivan to the Wyoming State Penitentiary for not less than 20 nor more than 35 years per count, with each to run consecutive. This appeal followed.

## STANDARD OF REVIEW

[¶ 9] Where there has been an objection at trial, we review claims of prosecutorial misconduct under a harmless error standard. *Harris v. State,* 2008 WY 23, ¶ 12, 177 P.3d 1166, 1170 (Wyo.2008). We typically review allegations of prosecutorial misconduct by reference to the entire record to determine whether or not a defendant's case has been so prejudiced as to deny him a fair trial. *Schafer v. State,* 2008 WY 149, ¶ 21, 197 P.3d 1247, 1251 (Wyo.2008) (citing *Szymanski v. State,* 2007 WY 139, ¶ 27, 166 P.3d 879, 886 (Wyo.2007)).

[¶ 10] In addressing a claim of prosecutorial misconduct, this Court focuses on the prejudice suffered by the defendant. *Smith v. State,* 2009 WY 2, ¶ 26, 199 P.3d 1052, 1059 (Wyo.2009). This Court has identified that reversal is not warranted unless a reasonable probability exists, absent the error, that an appellant may have enjoyed a more favorable verdict. *Trujillo v. State,* 750 P.2d 1334, 1337 (Wyo.1988) (citing *Jones v. State,* 735 P.2d 699, 703 (Wyo.1987)).

## DISCUSSION

[¶ 11] Sullivan argues that his right to a fair trial was violated by several instances of prosecutorial misconduct. First, Sullivan contends that Chief Nelson twice improperly

---

1. K.T. was removed from her home in a separate case.

2. Count I was dismissed prior to arraignment, and just before trial, the State dismissed Count IV.

3. The morning of trial, the State dismissed the second degree sexual assault charge, Count IV.

commented on Sullivan's guilt, and during his testimony vouched for the victim. We have held:

> [I]t is impermissible for either a lay witness or an expert to vouch for the credibility of another witness, or to comment on the guilt of the accused. The question becomes whether the error requires reversal or whether the error was harmless under W.R.A.P. 9.04.
>
> We must ascertain whether the error affects any substantial rights of the accused, providing grounds for reversal, or whether it is harmless. The harmless error standard is set out in W.R.A.P. 9.04: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded by the reviewing court." *See also* W.R.Cr.P. 52(a). An error is harmful if there is a reasonable possibility that the verdict might have been more favorable to the defendant had the error never occurred. To demonstrate harmful error, the defendant must show prejudice under "circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play." ... Under our harmless error analysis, we must judge whether the jury's verdict might have been different but for the witnesses' testimony.

*Wilks v. State*, 2002 WY 100, ¶ 21, 49 P.3d 975, 984 (Wyo.2002). "Among the factors to be considered are the nature and gravity of the error, the prosecutor's duty to do justice and refrain from improper methods, the likely impact on the average juror, the quality of the prosecution's case, and the closeness of the case."

*Drury v. State*, 2008 WY 130, ¶ 10, 194 P.3d 1017, 1020–21 (Wyo.2008) (footnote and citations omitted).

■ [¶ 12] Chief Nelson testified as follows:

Q. [PROSECUTOR]: Okay. And what did you first talk to [Sullivan] about then after the Miranda form?

A. [CHIEF NELSON]: We told him sort of the process, what's happened when the children are placed in State custody. At that time they have a doctor's exam, a physical exam shortly after they are placed into State custody, and then with Family Services we decide that some follow-up interviews needed to be done and that's where the CAP Center was involved. And then that interview was done and we gathered information from that recording of the interview at the CAP Center from [K.T.], the little girl.

Q. [PROSECUTOR]: Okay. And what's the next thing that you talked with [Sullivan] about?

A. [CHIEF NELSON]: That as Officer Brown and I viewed the recording of that interview that there was information we gathered from that of crimes committed against [K.T.], the little girl. And in that information that there w[ere] crimes that she mentioned that [Sullivan] committed to her.

Q. [PROSECUTOR]: Okay. What did you tell [Sullivan] that you had seen on that CD [of K.T.'s interview]?

[DEFENSE COUNSEL]: Your Honor, I'm going to object as to hearsay, anything regarding that video.

COURT: [Prosecutor]?

[PROSECUTOR]: Your Honor, in this case we're going to show that [Sullivan] admitted, "I did that." We have to have the Officer tell him what it was he's being told that he did in order to know what he confessed to.

COURT: The Court will allow it. Go ahead.

Q. [PROSECUTOR]: Would you please go on to what you told [Sullivan] about what you saw on the CD?

A. [CHIEF NELSON]: **I told him that from the information we gathered from that that there was, I think, I mentioned three separate crimes to [Sullivan] that he committed to [K.T.]. In that I said at one occasion they were at [Sullivan's] mother's home ... and while there that he removed her clothing, attempted to have intercourse with [K.T.] vaginally and as he was doing that [she] said that it hurt. He stopped, turned her over, and then had intercourse with her anally. And then said on another occasion**

**that he had anal intercourse with [K.T.] there at his mother's residence also.**

[¶ 13] Regarding the bold portion of the Chief's testimony, Sullivan alleges that Chief Nelson was improperly commenting on Sullivan's guilt and vouching for the credibility of the victim. We do not agree with Sullivan. In our review of the testimony, we agree with the State that because Sullivan had only generally admitted to doing to K.T. what they accused him of, the testimony as to K.T.'s allegations was relevant and critical to the jury's understanding of what Sullivan admitted to doing.

■ [¶ 14] Sullivan also takes issue with the following testimony, contending again that Chief Nelson improperly commented on Sullivan's guilt and vouched for K.T.'s credibility:

Q. [PROSECUTOR]: What if anything did you tell [Sullivan] about your observations of the video of [K.T.'s interview]?

A. [CHIEF NELSON]: **That from my time as a law enforcement officer, and I've done a number of these cases, that the information that was on that interview was very believable to me.**

[DEFENSE COUNSEL]: Your Honor, I'm going to object and move to strike, that's going to the province of the jury.

COURT: [Prosecutor?]

[PROSECUTOR]: Your Honor, in this case I am not having this Officer give his opinion for the jury, I'm trying to show what was stated to [Sullivan] so that there's no misapprehension of all the information given to him before he made his statement.

COURT: Overruled, I will admonish the jury that the opinion of the Officer as to the believability is of no consequence to this case, but simply what was stated to [Sullivan].

[¶ 15] Regarding opinion testimony, we have stated in looking at similar testimony, that it is "the jury's role, not the witness's, to make this determination." *Bennett v. State,* 794 P.2d 879, 882 (Wyo.1990). In deciding whether Sullivan was prejudiced by the district court's admission of the above-quoted testimony, we consider the improper testimony in light of the trial as a whole. *Drury,* ¶ 14, 194 P.3d at 1021–22; *Pendleton v. State,* 2008 WY 36, ¶ 11, 180 P.3d 212, 216 (Wyo.2008). Here, the jury was issued a curative, limiting instruction, but was also later instructed that testimony from law enforcement personnel was not entitled to any special consideration. Furthermore, the court also reminded the jury that it was the sole judge of the credibility of the witnesses, as did the State during closing arguments. This Court presumes the jury followed the court's instructions. *Brown v. State,* 953 P.2d 1170, 1177 (Wyo.1998).

[¶ 16] Along with the foregoing considerations, we also consider the strength of the evidence against Sullivan in order to determine whether there is a possibility that the jury could have found differently in the absence of the improper testimony. *Drury,* ¶ 15, 194 P.3d at 1022. The confession of Sullivan to law enforcement was quite damning, as was the testimony of K.T.

[¶ 17] In light of the evidence against Sullivan, including his own confession and K.T.'s testimony, we cannot say that the jury could have found differently in the absence of the improper testimony. We give due weight to the fact that the prosecutor did nothing to increase the prejudicial effect of the vouching testimony. For its part, the district court made an effort to instruct the jury to disregard Chief Nelson's testimony on credibility and to make its own determination as to the credibility of each witness. For those reasons, it is our conclusion that Sullivan was not prejudiced by the testimony, and the error was harmless.

■ [¶ 18] Sullivan's final allegation of prosecutorial misconduct is that the prosecutor made a remark informing the jury that he did not take a lie detector test. During Chief Nelson's testimony, the following exchange occurred:

Q. [PROSECUTOR]: What else, if anything, did you talk with [Sullivan] about?

A. [CHIEF NELSON]: I asked him what he knew about a lie detector test.

[DEFENSE COUNSEL]: Your Honor, I'm going to object to anything regarding

lie detectors, it's not scientifically proven, not foundation.

COURT: Counsel?

[PROSECUTOR]: Your Honor, one was not taken but I would be glad to withdraw the question if you want to admonish the jury we'll move to a different area.

COURT: Move to a different area. The jury is admonished to disregard the last question and answer.

 [¶ 19] "A fundamental premise of our criminal trial system is that 'the **jury** is the lie detector.'" *United States v. Scheffer*, 523 U.S. 303, 313, 118 S.Ct. 1261, 1266, 140 L.Ed.2d 413 (1998) (emphasis in original). Wyoming adheres to the rule that it is error for the State to introduce evidence that a defendant has refused to take a polygraph or "lie detector" test. *Schmunk v. State*, 714 P.2d 724, 732–33 (Wyo.1986). The rationale for that rule has been stated as follows.

> "'The impact upon the minds of the jurors of a refusal to submit to something which they might well assume would effectively determine guilt or innocence, under these conditions, might well be more devastating than a disclosure of the results of such test * * *.'"

*Id.* (quoting *Mills v. People*, 139 Colo. 397, 339 P.2d 998, 999 (Colo.1959)). Beyond that, we have characterized the introduction of such evidence as "overzealous prosecution":

> "All too frequently this court is compelled to reverse judgments of guilt in important criminal cases because of overzealous prosecution. It is the duty of prosecuting officers to guard against the introduction of incompetent evidence. Overprosecution of an accused should not be permitted by the trial court. In the instant case the district attorney insisted at great length upon introduction into evidence of testimony [refusal to take a lie detector test] which is uniformly held to be incompetent, in an unbroken line of authorities throughout the nation."

*Id.* (quoting *Mills*, 339 P.2d at 999–1000). The constitutional underpinning for this rule is that it is fundamentally unfair to assure a suspect that he has a right to remain silent, and then to use his exercise of that right against him. *State v. Gutierrez*, 142 N.M. 1, 162 P.3d 156, 162 (2007).

*Proffit v. State*, 2008 WY 114, ¶ 8, 193 P.3d 228, 232–33 (Wyo.2008), *cert. denied*, —— U.S. ——, 129 S.Ct. 1048, 173 L.Ed.2d 476 (2009).

[¶ 20] In *Proffit*, we encountered a "polygraph" issue and found plain error in part because the prosecutor repeatedly elicited testimony about the defendant refusing to take a polygraph test because the defendant was concerned that the "polygraph exam may confuse some of his homosexual behavior as he was molested as a child[.]" *Id.*, ¶ 6, 193 P.3d at 232. We held that the reference to the defendant's refusal to take the lie detector test violated the defendant's constitutional right to remain silent. *Id.*, ¶ 8, 193 P.3d at 233. The testimony about the refused polygraph and defendant's exercise of his right to silence and his right to counsel was simply too fundamental to the central issue to be considered harmless.

[¶ 21] Preceding *Proffit*, in *Schmunk* we cited to authority from other jurisdictions indicating that it is reversible error to reveal to a jury a defendant's refusal to take a lie detector test, and to then suggest such refusal showed consciousness of guilt. *Id.*, 714 P.2d at 733 n. 2. While Sullivan concedes that the alleged error is not as "rampant" as this Court has seen, he still urges that its significance cannot be understated because it relates to the credibility of the victim and the lack of credibility of Sullivan. While we agree with Sullivan that the error was noteworthy, we have never held that **any** reference to a polygraph requires automatic reversal. We will not do so in this case either.

[¶ 22] The record here shows little, if any, harm occurred as a result of the challenged comments. In the context of the trial testimony as a whole, the statement that a polygraph was not given—not that Sullivan refused one—was brief and spontaneous. The remark was not solicited. Most importantly, there was no prejudicial inference from the witness's remarks, because there was no explicit statement that there was a "refusal" to take the polygraph. The polygraph was never referenced again, and the district court

admonished the jury to disregard the question and the answer. Given the bulk of evidence in this case, we cannot speculate that the jury disregarded the court's admonitions and placed any importance on the comments by the prosecutor and Chief Nelson. We affirm the district court's ruling on this issue.

## CONCLUSION

[¶ 23] We affirm Sullivan's conviction, concluding that he received a fair trial, and that, in light of the evidence proven at trial, any error was harmless.

VOIGT, Justice, specially concurring.

[¶ 24] I concur in the result of the majority opinion out of respect for the doctrine of *stare decisis*. The majority has faithfully adhered to our precedent. I write separately because this case exemplifies the fact that our admonitions to prosecutors and law enforcement officials too often fall on deaf ears.

It is hard to believe that, with precedent being so clear, a criminal trial in Wyoming could include both the investigating officer giving his opinion that the victim's interview "was very believable to me," and that same officer and the prosecutor in tandem telling the jury that the defendant did not take a "lie detector test."

[¶ 25] The direct fault lies with the prosecutors. The indirect fault lies with the harmless error rule. So long as the system requires an appellant to prove that he or she was prejudiced by prosecutorial misconduct, some prosecutors will continue to act as they do.