# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 132

APRIL TERM, A.D. 2015

September 28, 2015

JASON BRADLEY McGILL,

Appellant
(Defendant),

v.                                                            S-15-0033

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sheridan County*
*The Honorable John G. Fenn, Judge*

*Representing Appellant:*
    Lisa K. Finkey, Gillette, Wyoming.

*Representing Appellee:*
    Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; John A. Brodie, Assistant Attorney General. Argument by Mr. Brodie.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    Jason Bradley McGill was convicted of sexual abuse of a minor in the first degree in violation of Wyo. Stat. Ann. § 6-2-314(a)(i)(c).  Mr. McGill argues that the district court abused its discretion when it denied his motions for a mistrial based on improper vouching testimony by one of the State's witnesses and on introduction of uncharged misconduct evidence without prior notice to the defendant.  Mr. McGill also asserts that the prosecutor committed misconduct in her rebuttal closing argument.  Together, Mr. McGill alleges that these amount to cumulative error which requires reversal of his conviction.  We affirm.

## ISSUES

[¶2]    1.    Did the district court abuse its discretion when it denied Mr. McGill's motion for a mistrial based on vouching testimony of a State's witness?

2.    Did the district court abuse its discretion when it denied Mr. McGill's motion for a mistrial based on testimony of a State's witness that introduced uncharged misconduct evidence?

3.    Did the prosecutor's statement in rebuttal to defense counsel's closing argument constitute plain error?

4.    Did cumulative error occur warranting the reversal of Mr. McGill's conviction?

## FACTS

[¶3]    Mr. McGill spent Thanksgiving Day 2013 with his three children from his second marriage; his live-in girlfriend, Jennifer Neumeyer; and her three children from previous relationships.  Mr. McGill and Ms. Neumeyer began arguing early in the day.  The argument escalated when Mr. McGill's ex-wife, Cristi McGill, called during Thanksgiving dinner and Mr. McGill allowed his children to speak with their mother.  Later that evening, after the children were in bed, Mr. McGill and Ms. Neumeyer also retired.  Their argument continued and Mr. McGill left their bedroom.  Ms. Neumeyer followed him a few minutes later.  While walking down the hall, Ms. Neumeyer noticed that the bedroom door of Mr. McGill's nine-year-old daughter, HM, was open.  Ms. Neumeyer later reported to authorities that when she looked in, she witnessed Mr. McGill performing oral sex on his daughter while she lay in bed.

[¶4]    Ms. Neumeyer did not immediately report the incident to authorities, instead she talked to a few friends about what had occurred.  After one of these friends insisted that she report what she had seen, Ms. Neumeyer spoke with a case worker from the

1

Department of Family Services (DFS) in Sheridan, Wyoming, and a Sheridan county sheriff's deputy. Mr. McGill was arrested a few days after Ms. Neumeyer's report to authorities and charged with sexual abuse of a minor in the first degree.

[¶5] Ms. Neumeyer's description of the events that took place on Thanksgiving remained consistent until shortly before trial. At that time, she recanted, claiming that she concocted the story because she was jealous of Cristi McGill and wanted her out of Mr. McGill's life. Nevertheless, trial proceeded as scheduled. The State called a number of witnesses, including the victim, Cristi McGill, Ms. Neumeyer, and friends of Ms. Neumeyer in whom she confided after the Thanksgiving incident. The State also called the deputy who performed the investigation, the DFS case worker who worked on the case, and the victim's pediatrician. For the defense, Mr. McGill was the only witness to testify.

[¶6] The jury convicted Mr. McGill of sexual abuse of a minor in the first degree in violation of Wyo. Stat. Ann. § 6-2-314(a)(i)(c), and Mr. McGill was sentenced to 25 to 35 years in prison. Mr. McGill timely filed his notice of appeal. Additional relevant facts will be addressed throughout the discussion section.

## *DISCUSSION*

### I.  *Did the district court abuse its discretion when it denied Mr. McGill's motion for a mistrial based on vouching testimony of a State's witness?*

[¶7] At trial, the State called Ryan Kerns, the sheriff's deputy who investigated the case. During direct examination, the prosecutor asked Deputy Kerns, "Okay. [W]hen that -- going back to that first interview, did you -- did you know beforehand the extent of what you were getting -- what this case might be about?" Deputy Kerns responded, "I didn't expect it to be this -- I didn't believe it was going to be as good information-wise as it turned out to be." Counsel for Mr. McGill requested to approach the bench and moved for a mistrial, arguing that Deputy Kerns' statement constituted "vouching for credibility, vouching for the weight of the evidence." The district court denied the motion for a mistrial, finding, "[T]he statement, as it came out, was objectionable . . . . The context in which it came out was not so objectionable that the Court was willing to grant a mistrial[.]" The district court then gave a limiting instruction:

> Ladies and gentlemen, as I indicated to you in the opening instructions, there are times throughout a trial where there is an objection that may be made, and the Court -- it's solely in the Court's providence to rule on those issues, and you're not to try to conjecture or guess what that is about. And at times the Court may strike certain evidence, and if I strike that evidence you're not to consider it, and I am striking the

2

response of this witness, to that last question, and you're not to consider it. It's not proper to be before you. You're not to consider the response that the witness had to that last question.

[¶8]  Mr. McGill argues that the district court erred when it denied his motion for a mistrial. We review a district court's denial of a motion for a mistrial for an abuse of discretion. *Boucher v. State*, 2011 WY 2, ¶ 34, 245 P.3d 342, 358 (Wyo. 2011). "An abuse of discretion occurs where the district court could not reasonably have concluded as it did." *Drury v. State*, 2008 WY 130, ¶ 8, 194 P.3d 1017, 1019 (Wyo. 2008) (citing *Thomas v. State*, 2006 WY 34, ¶ 10, 131 P.3d 348, 352 (Wyo. 2006)). "It is important to remember that there is a distinction between the role of this Court and the role of the district court in regard to [a motion for a mistrial]." *Yellowbear v. State*, 2008 WY 4, ¶ 67, 174 P.3d 1270, 1295 (Wyo. 2008). In deciding whether to grant a mistrial, the district court is charged with determining whether the conduct was "so prejudicial that justice could not be served by proceeding with trial." *Warner v. State*, 897 P.2d 472, 474 (Wyo. 1995). On review, we must resolve whether the district court abused its discretion in making its determination, and if the district court did abuse its discretion in denying a motion for a mistrial, whether that denial prejudiced the appellant. *Drury*, 2008 WY 130, ¶ 8, 194 P.3d at 1019 ("Appellant has the burden of showing that she was prejudiced by the district court's denial of the motion for mistrial.").

[¶9]  Mr. McGill characterizes the response of Deputy Kerns as improper vouching for the credibility of witnesses who testified before him (primarily the victim). It is within the exclusive province of the jury to determine the credibility of the witnesses. *Sweet v. State*, 2010 WY 87, ¶ 28, 234 P.3d 1193, 1205 (Wyo. 2010). It is therefore an unacceptable invasion into the jury's domain for a witness to testify concerning the credibility of another witness or to comment on the guilt of the accused. *Drury*, 2008 WY 130, ¶ 10, 194 P.3d at 1020 (citing *Lopez v. State*, 2004 WY 103, ¶ 22, 98 P.3d 143, 150 (Wyo. 2004)).

[¶10] We find that Deputy Kerns' response does not constitute vouching testimony. Deputy Kerns did not state that the testimony of any witness was or was not truthful. *See Whiteplume v. State*, 841 P.2d 1332, 1337-41 (Wyo. 1992) (deputy's testimony that he listened to the victim's story and made a determination that she had been raped constituted improper vouching for the credibility of the victim). Moreover, there was no indication in Deputy Kerns' statement that Mr. McGill was guilty. *See Ogden v. State*, 2001 WY 109, ¶ 23, 34 P.3d 271, 276 (Wyo. 2001) ("An interpretation of the evidence by a witness, even though that interpretation may be important in establishing an element of the crime and thus leading to the inference of guilt, is not in the same category as an actual conclusional statement on the guilt or innocence of the accused party." (quoting *Saldana v. State*, 846 P.2d 604, 616 (Wyo. 1993))). However, Mr. McGill also argues

3

that Deputy Kerns' response impermissibly offered an opinion on the quality of the case. We agree that Deputy Kerns' statement does fall within the larger ambit of W.R.E. 701,[1] which states:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

While we accept that Deputy Kerns' statement was rationally based on his perception of the case, it was not helpful to a clear understanding of his testimony or the determination of a fact at issue. As the First Circuit recognized:

> Lay opinion testimony will not be helpful to the jury when the jury can *readily* draw the necessary inferences and conclusions without the aid of the opinion. The nub of this helpfulness requirement is to exclude testimony where the witness is no better suited than the jury to make the judgment at issue, providing assurance against the admission of opinions which would merely tell the jury what result to reach.

*United States v. Diaz-Arias*, 717 F.3d 1, 12 (1st Cir. 2013) (internal quotations and citations omitted). Deputy Kerns' opinion that the case was "good information-wise" "usurped the jury's role instead of being helpful to it." *United States v. Vazquez-Rivera*, 665 F.3d 351, 361 (1st Cir. 2011). The determination concerning the quality of a case's evidence is an issue for the jury to decide, and Deputy Kerns was in no better position than the jury to draw the necessary inferences and conclusions required to assess the quality of the case. *See* 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 701.05 (Joseph M. McLaughlin ed., 2d ed. 2007) (testimony, the "sole function" of which is "to answer the same question that the trier of fact is to consider in its deliberations . . . [m]ay be excluded as unhelpful"). His testimony was therefore inadmissible pursuant to W.R.E. 701.

[¶11] While Deputy Kerns' testimony may have been inappropriate, it does not necessarily require a mistrial. We have instructed trial courts that "[g]ranting a mistrial is an extreme and drastic remedy that should be resorted to only in the face of an error so prejudicial that justice could not be served by proceeding with trial." *Warner*, 897 P.2d

---

[1] Vouching testimony also falls within the confines of W.R.E. 701. *See Barnes v. State*, 858 P.2d 522, 529 (Wyo. 1993) (recognizing that vouching is a form of opinion testimony regulated by W.R.E. 701).

at 474. "The trial court is in the best position to assess the prejudicial impact of such error." *Allen v. State*, 2002 WY 48, ¶ 75, 43 P.3d 551, 575 (Wyo. 2002).

[¶12] The district court reasonably concluded that the objectionable testimony was not so prejudicial as to warrant a mistrial. The small portion of objectionable testimony encompasses two lines of a three-volume trial transcript, which includes testimony confirming the incident by the victim herself. The objectionable testimony of Deputy Kerns was negligible, at best. Moreover, the district court took appropriate steps to ameliorate the testimony's effect by striking the response and giving a cautionary instruction to the jury. We assume that the jury follows the instructions and orders of the court, and that it disregarded Deputy Kerns' remark concerning the quality of the case. *Roderick v. State*, 858 P.2d 538, 549 (Wyo. 1993); *see also State v. Ebberson*, 305 N.W.2d 904, 908 (Neb. 1981) ("Ordinarily, when an objection to improper evidence is sustained and the jury is instructed to disregard it, such an instruction is deemed sufficient to prevent prejudice."). The district court reasonably could conclude as it did in denying Mr. McGill's motion for a mistrial, thus it did not abuse its discretion.

## II. Did the district court abuse its discretion when it denied Mr. McGill's motion for a mistrial based on testimony of a State's witness that introduced uncharged misconduct evidence?

[¶13] The State called Heather Erickson, a friend of Jennifer Neumeyer, to testify at trial. Ms. Erickson was one of the friends in whom Ms. Neumeyer had confided, and she helped Ms. Neumeyer report the incident. Because Ms. Neumeyer had recanted by the time of trial and testified that she had not witnessed Mr. McGill sexually assaulting his daughter, Ms. Erickson was called as an impeachment witness. Ms. Erickson proved to be a difficult witness to control. Her answers were often not responsive to the questions, and tended to take the form of a narrative. At one point during her testimony, the prosecutor asked, "After [Ms. Neumeyer] told you about this event, what -- what happened? What did you do?" Ms. Erickson responded:

> A. Well, I had -- already had scheduled a meeting with Deann, my pastor's wife, not to meet with her about that, but honestly right after [Ms. Neumeyer] told me that I was very troubled by what she had said and I was crying, because I felt so horrible for [HM]. And even when [Ms. Neumeyer] was telling me, I could tell she was very distraught when she was telling me, and I really wanted to get her some help, but I didn't know what to do.
>
> So I started praying, and I just felt like God told me that he was going to bring justice to this situation, and I had

5

peace about that, but I still felt like something else needed to happen or be done.

So anyways, I met with Deann after that, and she had encouraged me to tell her to call the Women's Advocacy Center. So while Deann was at my house I called Jennifer and told her to call the Advocacy Center. And she had called the Advocacy Center, I think -- and I'm not sure if that was the same day that she called them, but it was shortly after she had called them and went in and talked to them about the whole situation.

And during this also I just kept encouraging her to get out of the situation. ***She had told me that she had seen [Mr. McGill] peering in on her two girls[.]***

[Defense Counsel]: Objection, Your Honor. Not responsive to the question.

The Court: Sustained, sustained.

(Emphasis added.) Ms. Erickson's testimony continued, with additional objections from defense counsel and an admonition by the court directed at Ms. Erickson, until the prosecution tendered the witness to the defense. The judge then called counsel to the bench for a conference. At this conference defense counsel moved for a mistrial based on Ms. Erickson's testimony concerning Mr. McGill peering at Ms. Neumeyer's two girls. Defense counsel argued that Ms. Erickson's testimony introduced inadmissible W.R.E. 404(b) evidence that had not been noticed or ruled on prior to trial. The district court declared:

Well, the objection was made, the objection was unresponsive; I sustained it, I authoritatively sustained it. I said, "Sustained, sustained." There was no request at the time for a limiting instruction and we went several -- several questions and answers after that.

I don't think I can try to fix it with a limiting instruction at this point in time. I'm going to take the matter of the motion for a mistrial under advisement and go forward.

The district court later denied the motion, stating:

I took under advisement yesterday a motion for a mistrial. I have thought about it overnight and I'm going to deny the

6

motion. I noted, as I did in the record yesterday, that the objection was made, it was sustained, we moved on from that. I don't know if there's anything else that the Court can do at this point in time.

It wasn't solicited by the prosecution, it was, you know, it was a very talkative witness going on in a narrative form. The objection specifically was "nonresponsive," and the Court sustained that objection, and so I just don't think it's sufficient enough to grant a mistrial at this point in time. So the motion is denied.

[¶14] The witness's testimony concerning Mr. McGill "peering" at Ms. Neumeyer's girls was inadmissible without prior notice to the defense and a ruling by the district court. W.R.E. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."). Again, however, the inadmissibility of testimony does not necessarily result in a mistrial. Instead, the district court is given wide discretion to determine whether the objectionable testimony resulted in "an error so prejudicial that justice could not be served by proceeding with trial." *Warner*, 897 P.2d at 474. The district court, which was in the best position to judge the prejudicial impact of Ms. Erickson's testimony, found that it was not "sufficient enough to grant a mistrial at this point in time." The district court did not abuse its discretion in so finding.

[¶15] At the beginning of the witness's testimony, the district court advised the jury that Ms. Erickson's testimony could only be considered for the limited purpose of impeachment. The court went on to caution:

And with respect to statements made by Miss Neumeyer, and that are going to be repeated as some kind of a statement that she has made to this witness, that is not that the statement was true or false, that's not the purpose of that; it's only to establish the credibility or impeachment of Miss Neumeyer.

. . . With respect to any prior statement that Miss Neumeyer has made that's relayed to this witness and she repeats that, you're only to consider it for the purpose of the credibility and weight that you give to Miss Neumeyer, not whether or not the statement was true or false.[2]

---

[2] At the close of evidence, the district court also instructed the jury, "During the trial the Judge explained that certain evidence was admitted for a limited purpose. You may consider that evidence only for the limited purpose that the judge described, and not for any other purpose."

7

We found in a similar case that when a witness testified to events outside the confines of a trial court's 404(b) order, the defendant did not suffer prejudice because "[a]ny prejudicial effect of the testimony was mitigated by the court's actions[.]" *Thomas*, 2006 WY 34, ¶¶ 36-37, 131 P.3d at 358. The same can be said in this case. The jury was specifically instructed that any statement made by Ms. Neumeyer to this witness was not to be considered for its truth, but only for its impeachment value. The district court also immediately sustained the objection made by defense counsel, and while the court did not give a limiting instruction, that was due to defense counsel's delay in bringing the motion for a mistrial and failing to request such an instruction at the time of the testimony. Moreover, the statement made by Ms. Erickson was minor and was not referred to again throughout the two-and-a-half day trial. Considering the district court's actions and the brevity of the reference, the effect of the testimony was slight, at best. *See Thomas*, 2006 WY 34, ¶¶ 36-37, 131 P.3d at 358 ("Any prejudicial effect of the testimony was mitigated by the court's actions[.]"). The district court reasonably could conclude that Ms. Erickson's objectionable testimony was not so prejudicial as to warrant a mistrial, and did not abuse its discretion in so finding.

### III. Did the prosecutor's statement in rebuttal to defense counsel's closing argument constitute plain error?

[¶16] One of the defense strategies at trial was to demonstrate to the jury that the accusations against Mr. McGill "c[ame] out of nowhere with no other context." Defense counsel referred to this theory a number of times throughout his closing argument. The prosecutor responded to that argument in her rebuttal closing, stating, "Do we know that [Mr. McGill] has or hasn't done anything like this before? Nobody knows. He doesn't have a criminal history, that is true. Do we know anything? You don't know that. Nobody knows that." Mr. McGill argues that this constituted prosecutorial misconduct by implying to the jury that the prosecutor knew facts not in evidence to which the jury was not privy.

[¶17] There was no objection to the prosecutor's remarks during trial; we therefore review for plain error. W.R.A.P. 9.05 ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."); *Brown v. State*, 2014 WY 104, ¶ 18, 332 P.3d 1168, 1174 (Wyo. 2014) ("Prosecutorial misconduct implicates the right to a fair trial and, as a consequence, due process of law." (quoting *Solis v. State*, 2013 WY 152, ¶ 42, 315 P.3d 622, 632 (Wyo. 2013))). "Plain error exists when: 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right resulting in material prejudice." *Collins v. State*, 2015 WY 92, ¶ 10, 354 P.3d 55, 57 (Wyo. 2015).

8

[¶18] Mr. McGill has met the first prong of our plain error test because the incident alleged as error is plainly reflected in the transcript of the trial proceedings. *Id.* However, it is less clear whether the prosecutor's remarks constitute a "transgression of a clear and unequivocal rule of law." *Id.*

[¶19] Mr. McGill argues that by stating, "You don't know that[,]" the prosecutor was improperly implying to the jury that the State knew facts that the jury did not. Indeed, it is well established that a prosecutor "must restrict his argument to the evidence presented to the jury." *Talley v. State,* 2007 WY 37, ¶ 19, 153 P.3d 256, 262 (Wyo. 2007). We have also recognized that prosecutors should refrain from suggesting that they have independent knowledge of facts that could not be presented to the jury. *Id.* at ¶ 21, 153 P.3d at 263. Viewed in isolation, the prosecutor's statement, "You don't know that[,]" may have suggested that the State was aware of other illegal acts committed by Mr. McGill which could not be presented to the jury. However, we do not view a prosecutor's statement in isolation. Instead, "we consider the prosecutor's argument in the context in which it was made and with regard to the evidence produced at trial." *Trujillo v. State,* 2002 WY 51, ¶ 5, 44 P.3d 22, 24 (Wyo. 2002). The entire passage reads, "Do we know that [Mr. McGill] has or hasn't done anything like this before? Nobody knows. He doesn't have a criminal history, that is true. Do we know anything? You don't know that. Nobody knows that." Taken in context, we cannot conclude that the prosecutor was attempting to imply that the State had information that the jury did not. Instead, the prosecutor was attempting to establish that ***nobody***, including the State, knows Mr. McGill's history.

[¶20] Moreover, we have given prosecutors wide latitude in arguing to a jury based on a statement or strategy forwarded by the defense. *Budig v. State,* 2010 WY 1, ¶ 17, 222 P.3d 148, 156 (Wyo. 2010); *Carothers v. State,* 2008 WY 58, ¶ 16, 185 P.3d 1, 12 (Wyo. 2008); *Moore v. State,* 2003 WY 153, ¶ 32, 80 P.3d 191, 199 (Wyo. 2003); *Mitchell v. State,* 982 P.2d 717, 723-24 (Wyo. 1999); *Sides v. State,* 963 P.2d 227, 232 (Wyo. 1998). The ABA Standards adopted by this Court recognize that "[A] prosecutor may be justified in making a reply to an argument of defense counsel that may not have been proper if made without provocation." *ABA Standards for Criminal Justice,* Standard 3-5.8, *Argument to the Jury,* Commentary on *Injection of Extraneous Issues,* at 91 (2d ed. 1986 Supp.). In the end, "[t]his is precisely the type of case in which we are reluctant to find plain error in a prosecutor's closing argument. The questioned statement is not such a clear violation of a rule of law that we can say the second element of plain error analysis is met." *Stastny v. State,* 2011 WY 138, ¶ 16, 261 P.3d 747, 752 (Wyo. 2011).

### IV. Did cumulative error occur warranting the reversal of Mr. McGill's conviction?

[¶21] Mr. McGill argues that the accumulation of the foregoing errors requires the reversal of his conviction. Cumulative error occurs when two or more nonreversible errors have the potential to prejudice the defendant to the same extent as a single

9

reversible error. *McClelland v. State*, 2007 WY 57, ¶ 27, 155 P.3d 1013, 1022 (Wyo. 2007). However, reversal of a conviction is appropriate only when the accumulated effect of the errors "constitutes prejudice and the conduct of the trial is other than fair and impartial." *Id.* (quoting *Alcala v. State*, 487 P.2d 448, 462 (Wyo. 1971)).

[¶22] In resolving whether cumulative error has occurred we consider only those matters which we determine constitute error. *McClelland*, 2007 WY 57, ¶ 27, 155 P.3d at 1022. In this case, we found that the district court did not abuse its discretion (committed no error) when it denied Mr. McGill's motions for a mistrial. We also found that the prosecutor's statement in her rebuttal closing argument did not constitute error. "A claim of cumulative error cannot be recognized where there is no underlying error to support it." *Luedtke v. State*, 2005 WY 98, ¶ 36, 117 P.3d 1227, 1234 (Wyo. 2005) (citing *Young v. State*, 849 P.2d 754, 767 (Wyo. 1993)). We have rejected Mr. McGill's claims of error, and thus find no basis for his claim of cumulative error.

## *CONCLUSION*

[¶23] The district court did not abuse its discretion in denying Mr. McGill's motions for a mistrial based on the testimony of Deputy Kerns and Heather Erickson. The prosecutor's statement during her rebuttal closing argument did not constitute plain error. Finding no error occurred, there is no basis to recognize Mr. McGill's claim of cumulative error. Affirmed.