# IN THE SUPREME COURT, STATE OF WYOMING

# 2016 WY 97

OCTOBER TERM, A.D. 2016

*October 10, 2016*

SKUYLER SALINAS,

**Appellant**
**(Defendant),**

**v.**

S-16-0066

**THE STATE OF WYOMING,**

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
    Office of the State Public Defender:  Diane Lozano, State Public Defender; David E. Westling, Senior Assistant Appellate Counsel.  Argument by Mr. Westling.

*Representing Appellee:*
    Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Caitlin F. Young, Assistant Attorney General; Kathryn A. Adams, Assistant Attorney General.  Argument by Ms. Adams.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]   Appellant Skuyler Salinas asks us to set aside his stalking conviction.  He claims the district court erred in not granting a mistrial and in not imposing a stiffer sanction for a discovery violation. We affirm.

## ISSUES

[¶2]   1.  Did the district court abuse its discretion by not granting a mistrial for a violation of an order *in limine* concerning W.R.E. 404(b) evidence?

2.  Did the district court abuse its discretion by imposing a discovery sanction that precluded the State from introducing untimely disclosed text messages but allowing the jury to hear testimony about them?

## FACTS

[¶3]   Appellant and Ashley Martinez's relationship ended a year after their daughter, L.S., was born.  After some time had passed, an incident occurred in Fort Collins, Colorado.  While Ms. Martinez, her date, and L.S. were stopped at a traffic light, Appellant, who apparently had been following them, came over and began punching her car and yelling at them.  Ms. Martinez was eventually able to drive off, call the police, and get to the police station.

[¶4]   The next day, Ms. Martinez obtained a temporary ex-parte stalking order of protection.  After a hearing was held a few days later, an order of protection valid for six months was issued.  That order forbade Appellant from contacting Ms. Martinez and certain members of her family.  Appellant repeatedly violated the order by texting Ms. Martinez.

[¶5]   Appellant was tried on one count[1] of felony stalking for violating the protective order.[2]  As the case proceeded toward trial, the State filed a notice of intent to introduce evidence pursuant to W.R.E. 404(b).  It disclosed that it intended to introduce evidence of Appellant's misconduct and interactions with Ms. Martinez and her family members that occurred outside the scope of the charged date range.  Appellant objected and a hearing was held, after which the district court excluded much of the evidence sought to be introduced by the State by an order *in limine*.

---

[1] At one point Appellant was charged with felony stalking in two cases, which the district court consolidated at the State's request.  Only one count was ultimately tried.
[2] Wyo. Stat. Ann. § 6-2-506(e)(iv) (Lexis Nexis 2015) provides that a person who violates a temporary or permanent order of protection by, *inter alia*, communicating with a person protected by the order in a manner that harasses commits a felony punishable by imprisonment for up to ten years.

1

[¶6]    The court allowed the State to present evidence concerning the details of four separate incidents, including the Fort Collins event that led to the protective orders. However, the district court's order precluded witnesses from testifying that Appellant "was arrested, charged or pled guilty to any crime."

[¶7]    Appellant also filed a motion to compel certain specific discovery. In particular, he asked that the court require the State to produce Ms. Martinez's father David Martinez's cell phone for inspection. The State responded as follows:

> This is not available for inspection by Defense Counsel. Mr. Martinez's cell phone at one time contained text message conversations between him and the Defendant in January and August, 2014, copies of which have been provided to defense counsel in discovery. Mr. Martinez is employed by the military and has a very high security clearance. His cell phone is provided through his employment and is subject to the same security clearance.
>
> Further, it is believed by the State that the Defendant's mother is in possession of his cell phone that was used to harass [Ms. Martinez] and David Martinez. It is also believed by the State that the Defendant is in regular contact with his mother via telephone and could at any time cause his cell phone to be produced to his defense counsel for her inspection.

[¶8]    The record does not contain a ruling on this motion, so it remained an open issue until trial. The court's case management order required the parties to file pretrial memoranda fifteen days before trial, and to list all exhibits. The State listed "screen shots of text messages sent to David Martinez's phone from Defendant on January 31, 2014." Wyoming Rule of Criminal Procedure 16(a) provides that upon written demand, the State shall permit the inspection of documents intended for use by the State at trial. Mr. Salinas' attorney did make such a demand. The record is unclear as to exactly what inspection was permitted, but the State should have allowed inspection of documents it intended to use at trial.

[¶9]    A jury trial commenced, and Ms. Martinez was called by the State. She testified about her interactions with Appellant that led to the issuance of the protective order and about subsequent violations of that order. During her direct examination, the following exchange occurred:

> Q.  Did you ever at any point deny visitation to Mr. Salinas?

2

A. Yes, ma'am.

Q. During that period of time?

A. Yes, ma'am.

Q. When was that?

A. We found out that he had two active warrants, one in Cheyenne, and one in Colorado.

Appellant's attorney immediately objected to the last answer and asked for a bench conference. Defense counsel argued that the answer violated the court's 404(b) order *in limine* and moved for a mistrial.

[¶10] The district court denied the motion because it found that the answer was not responsive to the question asked, that it was not a deliberate violation of the order by the State, and that it was not sufficiently prejudicial to require a mistrial. It then instructed the jury that "the information from this witness that warrants existed will go without further explanation and is stricken. That is, you are not to consider, one way or the other, the evidence concerning warrants."

[¶11] The State also called David Martinez. During the course of direct examination, Appellant's attorney requested a bench conference to discuss evidence he believed the State was going to introduce through Mr. Martinez. He objected to the introduction of screen shots of text messages between Mr. Salinas and Mr. Martinez, which was the subject of the motion to compel. He argued that he was not provided copies of the messages until that morning, just before Mr. Martinez took the witness stand, and that he had not seen them before.

[¶12] The district court ruled that the screenshots of the text messages were not written statements under W.R.Cr.P. 16(a)(1), and so the State did not have a duty to provide them.[3] Nevertheless, the district court found the issue before it to be whether disclosure of the subject text messages prejudiced Appellant's ability to proceed with the witness. It ultimately decided to let Mr. Martinez testify about the texts, but that the screenshots of the exhibits could not be shown to the jury or introduced as exhibits.

---

[3] The district court's reasoning that the text messages were not written statements by Appellant leaves this Court somewhat at a loss. Our review of W.R.Cr.P. 16(a)(1)(A)(i) convinces us that a written statement by Appellant would include his text messages. *Cf. Ceja v. State*, 2009 WY 71, ¶¶ 13-17, 208 P.3d 66, 68-70 (Wyo. 2009); 5 Wayne R. LaFave et al., *Criminal Procedure* § 20.3(b) (4th ed., Dec. 2015 update); 2 Charles A. Wright et al., *Federal Practice & Procedure Criminal* § 253 (4th ed., Apr. 2016 update). We will treat them as such.

[¶13] The trial continued and culminated in a guilty verdict. The district court sentenced Appellant to serve three to five years in prison with a boot camp recommendation to the Department of Corrections.[4]

[¶14] Appellant timely perfected this appeal.

## DISCUSSION

### *Denying Motion for Mistrial*

[¶15] Appellant asserts that the district court erred in denying his motion for a mistrial because of the statement made by Ms. Martinez about his outstanding warrants. The denial of a motion for mistrial is reviewed for an abuse of discretion. *Hill v. State*, 2016 WY 27, ¶ 42, 371 P.3d 553, 564 (Wyo. 2016); *McGill v. State*, 2015 WY 132, ¶ 8, 357 P.3d 1140, 1144 (Wyo. 2015). We have explained the standard as follows:

> (1) when a motion for mistrial or new trial is presented, the district court considers the motion and grants it if justice so requires; (2) justice requires that the motion be granted only if the appellant has been prejudiced because his or her substantial rights were abridged; (3) if the motion is denied, and that denial is appealed, we review that denial for an abuse of discretion; (4) abuse of discretion has occurred where the district court could not have reasonably concluded as it did.

*Hill,* ¶ 42, 371 P.3d at 565.

[¶16] There is no doubt that Ms. Martinez stated on direct examination that Appellant had warrants out for his arrest. There is likewise no question that such a statement violated the *in limine* order. However, this Court has reaffirmed that "[g]ranting a mistrial is an extreme and drastic remedy that should be resorted to only in the face of an error so prejudicial that justice could not be served by proceeding with trial." *McGill*, ¶ 11, 357 P.3d at 1145 (quoting *Warner v. State*, 897 P.2d 472, 474 (Wyo. 1995)).

[¶17] The district court therefore had to determine whether the statement was so prejudicial that justice could not be served by continuing with the trial. *McGill*, ¶ 12, 357 P.3d at 1145. It was in the best position to assess its prejudicial impact. *See id.*, ¶ 11, 357 P.3d at 1145. We find that the court reasonably concluded that Ms. Martinez's statement—a single statement that was volunteered and unresponsive to the question asked—was not so prejudicial as to warrant a mistrial. *See Warner*, 897 P.2d at 474-75.

---

[4] If Appellant was accepted in the boot camp program and successfully completed it, his sentence might be reduced to place him on probation, in the district court's discretion.

4

Furthermore, the district court took appropriate curative action by striking the response and giving a cautionary instruction to the jury. *See McGill*, ¶ 12, 357 P.3d at 1145. We have no reason to suppose that the jury did not follow the instruction, and we can therefore only believe it disregarded the statement. *See id.* (reaffirming that when the jury is instructed to disregard evidence that has been objected to and sustained, the instruction provided is considered sufficient to thwart any prejudice arising from it). The district court's denial of Appellant's motion for a mistrial was therefore reasonable, and it did not abuse its discretion.

### *Sanction for Discovery Violation*

[¶18] Both Appellant and the State frame the second issue as one centering upon a claimed discovery violation based upon the late disclosure of Mr. Martinez's text messages. Although the circumstances are unclear, we will assume that the screenshots of the text messages were not disclosed, and that they are statements which should have been. This narrows the question to the appropriateness of a sanction. A district court's determination of a sanction for a discovery violation is reviewed by this Court for an abuse of discretion. *Toth v. State*, 2015 WY 86A, ¶ 25, 353 P.3d 696, 704-05 (Wyo. 2015). The ultimate issue is whether or not the court could reasonably conclude as it did. *Id.*

[¶19] Wyoming's rules governing criminal procedure provide as follows with respect to a party's failure to comply with discovery obligations and the court's power to act in such a situation:

> (d) *Regulation by court*. –
>
> *       *       *
>
> (2) Failure to Comply. – If at any time during the course of the proceedings, it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place and manner of making the discovery and inspection and may prescribe such terms and conditions as are just.

W.R.Cr.P. 16(d)(2). In this same vein, we have referred to several factors to aid a court in determining the appropriateness of a sanction:

(1) the reasons the State delayed producing the requested materials, including whether or not the prosecutor acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the delay; and (3) the feasibility of curing the prejudice with a continuance. Once those factors are weighed, the district court should impose the least severe sanction which will ensure the State's compliance with its discovery responsibilities.

*State v. Naple*, 2006 WY 125, ¶ 24, 143 P.3d 358, 365 (Wyo. 2006) (citations omitted) (agreeing with federal case law interpreting Rule 16(d)(2), which provides three factors for the court to consider in determining the appropriateness of a sanction).

[¶20]  We find that the district court could reasonably conclude as it did.  It was well within the bounds of reason when it ruled that the State could elicit testimony about the text messages, but that copies of the text messages would not be received in evidence and thus would not be shown to the jury or sent to the jury room during deliberations. W.R.Cr.P. 16(d)(2) permits such an order, and the sanction  provided a fair balance based upon the nature of the evidence and discovery dispute surrounding it.  This ruling was not without meaning—the State lost its ability to let the jury see the screenshots and have them to study as much as it wished during deliberations, as it could have if they had been timely produced.[5]  This should provide some deterrent to future violations.  The district court did not abuse its discretion in fashioning this sanction for the discovery violation it appears to have found.

[¶21]  Affirmed.

---

[5] The parties have not raised any issues about the so-called "best evidence" rule to be found in Wyoming Rules of Evidence 1001 through 1007, and we will not venture into that territory in this opinion.