# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 135

### OCTOBER TERM, A.D. 2020

October 23, 2020

STRIDER DEAN LANGLEY,

Appellant
(Defendant),

v.

S-20-0034

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
The Honorable Catherine R. Rogers, Judge

*Representing Appellant:*
H. Michael Bennett, Bennett Law Group, P.C., Cheyenne, Wyoming.

*Representing Appellee:*
Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Catherine M. Mercer, Assistant Attorney General.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    Strider Dean Langley was convicted after a jury trial of attempted aggravated robbery.  He claims the district court committed misconduct by explaining to the State how to lay the foundation for admission into evidence of the gun used in the robbery.  He also asserts the district court erred by denying his motion for a mistrial after the State violated an order in limine.  We affirm.

## ISSUES

[¶2]    We restate Mr. Langley's appellate issues as:

1.  Did the district court commit misconduct and deprive Mr. Langley of a fair trial when it commented about the State's presentation of the foundation for admission of the gun?

2.  Did the district court abuse its discretion by denying Mr. Langley's motion for a mistrial after the State elicited an answer from a witness in violation of an order in limine?

## FACTS

[¶3]    On January 7, 2018, Mr. Langley was involved in a single car rollover on an Interstate 80 on-ramp in Cheyenne, Wyoming.  Mr. Langley kicked out the windshield of the wrecked vehicle and ran away.  A witness followed him and called 911.

[¶4]    Mr. Langley ran to the Lamp Lounge and attempted to enter through a sliding glass door.  The victim was in the lounge and went to help Mr. Langley with the door because "it sticks."  When the victim opened the door, Mr. Langley pointed a gun at him and demanded his car keys.  The victim put his hands up and said he did not have any keys because he was not "even driving."  Mr. Langley left the Lamp Lounge and tried to open the doors of cars parked nearby.

[¶5]    Mr. Langley found an unlocked silver BMW and entered it.  When law enforcement arrived at the scene, Mr. Langley got out of the car and placed his gun on the roof.  The officers arrested Mr. Langley and searched him.  During the search, the officers found, among other things, two cell phones and glass pipes containing a white residue which the State believed was methamphetamine.

[¶6]    The State charged Mr. Langley with attempted aggravated robbery in violation of Wyo. Stat. Ann. §§ 6-1-301(a) and 6-2-401(a)(ii), (c)(ii) (LexisNexis 2017) for attempting

1

to "take the keys from [the victim] so as to steal his vehicle while pointing a gun at him[.]"[1] It also charged Mr. Langley with aggravated burglary in violation of Wyo. Stat. Ann. § 6-3-301(a), (c)(i) (LexisNexis 2017), for unlawfully entering the BMW with the intent to steal a cell phone while armed with a gun.[2] Mr. Langley filed a motion in limine under Wyoming Rules of Evidence (W.R.E.) 401, 402, 403, and 404 to prohibit the State from presenting evidence regarding the drugs or drug paraphernalia seized from him during his arrest. The district court granted the motion.

[¶7] After a trial, the jury convicted Mr. Langley of attempted aggravated robbery and acquitted him of aggravated burglary. The district court sentenced him to serve five to seven years in prison, and he appealed. Additional facts will be provided as necessary to our discussion of the issues.

---

[1] Wyo. Stat. Ann. § 6-1-301(a) defines attempt, in pertinent part, as:

(a) A person is guilty of an attempt to commit a crime if:

(i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime[.]

When Mr. Langley was charged, Wyo. Stat. Ann. § 6-2-401(a)(ii), (c)(ii) (LexisNexis 2017) defined aggravated robbery, in pertinent part, as:

(a) A person is guilty of robbery if in the course of committing a crime defined by W.S. 6-3-402 [theft] . . . he . . . (ii) [t]hreatens another with or intentionally puts him in fear of immediate bodily injury. . . .

(c) Aggravated robbery is a felony punishable by imprisonment for not less than five (5) years nor more than twenty-five (25) years if in the course of committing the crime of robbery the person . . . (ii) [u]ses or exhibits a deadly weapon or a simulated deadly weapon.

[2] Wyo. Stat. Ann. § 6-3-301 defines aggravated burglary, in pertinent part, as:

(a) A person is guilty of burglary if, without authority, he enters . . . [a] vehicle with intent to commit theft . . . therein.

. . .

(c) Aggravated burglary is a felony punishable by imprisonment for not less than five (5) years nor more than twenty-five (25) years, a fine of not more than fifty thousand dollars ($50,000.00), or both, if, in the course of committing the crime of burglary, the person: (i) [i]s or becomes armed with or uses a deadly weapon or a simulated deadly weapon[.]

2

# DISCUSSION

## *Judicial Misconduct*

[¶8]    Mr. Langley asserts the district court committed misconduct and deprived him of a fair trial by telling the State how to establish the foundation for admission of the gun.  We review an assertion of judicial misconduct for abuse of discretion.  *Fernandez v. State,* 2007 WY 198, ¶ 12, 172 P.3d 730, 733-34 (Wyo. 2007); *Belden v. State,* 2003 WY 89, ¶ 9, 73 P.3d 1041, 1049 (Wyo. 2003).

> Allegations of judicial misconduct during trial must be decided on the particular facts and circumstances surrounding such alleged misconduct; and in order to warrant or require the granting of a new trial it must affirmatively appear that the conduct was of such a nature that it prejudiced the substantial rights of the complaining party.

*Belden,* ¶ 7, 73 P.3d at 1048-49 (quoting *State v. Hamilton,* 240 Kan. 539, 731 P.2d 863, 869 (1987)).  Our "role on appeal is 'not to determine whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid,' but whether the judge's behavior was so prejudicial that it denied a defendant a fair trial."  *Fernandez,* ¶ 12, 172 P.3d at 733-34 (quoting *Belden*, ¶ 9, 73 P.3d at 1050) (other citation omitted).  "If the actions of the trial court prejudice a defendant's right to a fair trial, then, obviously, an abuse of discretion is present."  *Belden,* ¶ 9, 73 P.3d at 1049.

[¶9]    Prior to requesting admission of the gun into evidence, the State attempted to establish the chain of custody.  Laramie County Sheriff Deputy Jason Gillott testified he had retrieved the gun at the scene, "cleared" it by removing the ammunition, and placed it in an evidence bag.  Cheyenne police officer Larry Moniz stated Deputy Gillott gave him the evidence bag containing the gun to transport to the police department.  Another Cheyenne police officer, Casey Patterson, testified he logged the gun into evidence at the department and recorded the serial number.  Officer Patterson identified the gun, which was marked as State's Exhibit 6, and stated that, when he looked at it the day before trial, it was in substantially the same condition as when he logged it into evidence on the date of the crime.  He did not remove the gun from the evidence bag, and the State did not ask the district court to admit the gun into evidence at that time.

[¶10]  On the second day of trial, outside the presence of the jury, the State indicated it intended to call a witness from the State Crime Lab to testify the gun had been sent to the lab for testing.  Mr. Langley objected because the State had not previously disclosed the witness.  The State explained the testimony was necessary because the defense would not stipulate to the chain of custody of the gun.

[¶11]   The district court had the following exchange with the prosecutor:

> THE COURT:  Here is my thought.  I have to tell you, I've been very confused during the course of this trial by the handling of the evidence, particularly the gun.
>
> In a lot of respects you [the State] have treated the gun like it's fungible evidence, like you would treat cocaine or methamphetamine or heroin or some drug like that, instead of an item – I mean, you could have had that gun offered into evidence previously just by having Officer Patterson say, I took the gun.  I logged it into evidence.  It was a Ruger 380 model, or whatever, with these serial numbers on it and opened that bag up and offered it and asked him, is [i]t in the same or substantially the same condition today as it was back on January 7th?  And that gun would have been in evidence.  So I've been just really confused the whole trial, and the jury hasn't seen the gun.
>
> . . .
>
> So now you're adding another layer of confusion about this other test that you were going to do on the gun.  I guess I'm just – and you haven't listed this witness previously or disclosed this witness?
>
> PROSECUTOR:   That is correct, Judge.   I had a discussion with [defense counsel] yesterday afternoon.  And she adamantly objected to the gun coming into evidence without the entire custodial chain put in place[.]
>
> . . .
>
> THE COURT:  . . .  [L]ook at the Rules of Evidence, what you have to establish for a foundation to get evidence in.  This isn't cocaine.
>
> This is an identifiable piece of evidence that you could have offered yesterday.
>
> You could have showed – well, I'm not going to go there.  But I've just been very confused by the way that you've handled the evidence in this case, I will just say that.

4

The district court sustained Mr. Langley's objection and refused to allow the crime lab witness to testify.

[¶12] The prosecutor then stated she was going to call Officer Patterson back to the witness stand to provide additional foundation for admission of the gun. The district court responded:

> I would have let that gun [into evidence] if you had asked the right questions. . . . I was just really confused why we have to have somebody from the evidence locker at the PD who wasn't out at the scene. They weren't there when the gun was taken. But I'm not telling you how to present your case - -

[¶13] Defense counsel stated:

> Your Honor, could I maybe put something on the record now? I'm uncomfortable in making this argument, but I think if the [c]ourt hadn't just said to the State that it was confused about the presentation of evidence, they may not have been able to get the gun in. And now they plan to recall a witness.
>
> And I guess I'm concerned about that colloquy. And then now has the [c]ourt unintentionally assisted the State in proving their case?

The district court refused to allow the State to call Officer Patterson to testify a second time.

[¶14] The district court subsequently admitted the gun into evidence, over a defense objection, when the Cheyenne Police Department evidence manager testified.[3] She identified the gun marked as State's Exhibit 6, confirmed the serial number, and described how evidence is managed at the police department. The district court stated the foundation for admission of the gun had been "established through the testimony of Officer Patterson and the other officers on the scene as to the collection of the weapon. The recording of the serial number and the packaging are the same."

---

[3] The State gave prior notice the evidence manager may testify for purposes of "authentication, foundation and chain of custody" of the physical evidence. Mr. Langley did not object to her appearance at trial.

[¶15] While we do not condone the district court instructing a party on how to obtain admission of evidence at trial, that is not entirely what happened here. Defense counsel believed, mistakenly, that the gun could not be admitted without establishing a complete chain of custody by explaining every step of the handling and analysis undertaken by law enforcement. The prosecutor apparently accepted that proposition and explained to the district court that the defense objected to introduction of the gun into evidence. Consequently, the prosecutor attempted to add a witness to provide more testimony about the chain of custody. The district court responded the attorneys should "look at the rules of evidence," essentially telling both sides an additional witness was unnecessary and they were incorrect about the appropriate foundation for admission of the gun into evidence. Mr. Langley does not provide any authority that, in ruling on evidentiary objections, a trial court is limited to simply stating "sustained" or "overruled." He has not shown it is improper for a trial court to explain the basis for its rulings in a neutral manner. *See generally*, W.R.E. 103(b) ("The court may add any other or further statement which shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon.")

[¶16] Furthermore, even if the district court's comments assisted the State, they did not prejudice Mr. Langley. The court <u>denied</u> the State's requests to call the State Crime Lab witness and to re-call Officer Patterson to fortify the foundation for the gun. The district court admitted the gun into evidence during the testimony of a previously disclosed witness, specifically relying on the foundation the State had provided through law enforcement testimony <u>prior</u> to the court's alleged improper comments. Thus, the premise of Mr. Langley's objection at trial, i.e., that the State would not have been able to "get the gun" into evidence without the district court's coaching on proper foundation, was incorrect. Notably, Mr. Langley does not directly challenge the district court's decision to admit the gun into evidence.

[¶17] This case is analogous to one aspect of *Belden*. Mr. Belden claimed the district court committed misconduct by supplying the prosecution with a theory for admission of uncharged misconduct evidence. *Belden,* ¶ 15, 73 P.3d at 1056-57. When we examined the record, it was apparent the State had presented the theory earlier in the case. *Id.*, ¶ 16, 73 P.3d at 1057-58. The State did not gain any advantage as a result of the district court's comments in *Belden* or in this case. The district court did not deprive Mr. Langley of a fair trial.

### *Mistrial*

[¶18] Mr. Langley maintains the district court erred by denying his motion for a mistrial after the State violated an order in limine. "The denial of a motion for mistrial is reviewed for an abuse of discretion." *Salinas v. State,* 2016 WY 97, ¶ 15, 380 P.3d 647, 650 (Wyo. 2016) (citing *Hill v. State,* 2016 WY 27, ¶ 42, 371 P.3d 553, 564 (Wyo. 2016); *McGill v.*

*State,* 2015 WY 132, ¶ 8, 357 P.3d 1140, 1144 (Wyo. 2015)). The following standard explains the roles of the district court and this Court regarding mistrial motions:

> (1) when a motion for mistrial or new trial is presented, the district court considers the motion and grants it if justice so requires; (2) justice requires that the motion be granted only if the appellant has been prejudiced because his or her substantial rights were abridged; (3) if the motion is denied, and that denial is appealed, we review that denial for an abuse of discretion; (4) abuse of discretion has occurred where the district court could not have reasonably concluded as it did.

*Salinas,* ¶ 15, 380 P.3d at 650 (quoting *Hill,* ¶ 42, 371 P.3d at 565). *See also, Yellowbear v. State,* 2008 WY 4, ¶ 68, 174 P.3d 1270, 1295-96 (Wyo. 2008).

[¶19] At trial, the State attempted to elicit testimony from Officer Patterson that Mr. Langley did not have keys to the BMW when he was arrested. The district court sustained Mr. Langley's objections to the State's questions as leading. Finally, the prosecutor asked an open-ended question:

> Q.  What did you find on Mr. Langley?
>
> A.  What I recall finding is – it was kind of a team effort to do the search on him. So knowing what I pulled off of his person versus Officer Moniz and Sergeant Phillips, what was pulled off of him I know were some cell phones, an i-pod, a quantity of cash. There was a meth --."

[¶20] Mr. Langley objected. The district court held a bench conference where it admonished the prosecutor for failing to properly instruct the officer not to mention drugs or drug paraphernalia in accordance with the order in limine. The prosecutor responded that she had done so, but the officer must have been "thrown" by the objections to her leading questions.

[¶21] Mr. Langley moved for a mistrial. The State responded that an improper "half a word" did not warrant a mistrial. The district court denied the mistrial motion; however, it gave a curative instruction telling the jury to disregard the officer's answer.

[¶22] Although Officer Patterson's testimony clearly violated the order in limine, the district court did not abuse its discretion by denying Mr. Langley's motion for a mistrial. "[G]ranting a mistrial is an extreme and drastic remedy that should be resorted to only in the face of an error so prejudicial that justice could not be served by proceeding with trial."

7

*McGill*, ¶ 11, 357 P.3d at 1145 (citation and quotation marks omitted); *Willoughby v. State*, 2011 WY 92, ¶ 12, 253 P.3d 157, 162 (Wyo. 2011). The record in this case does not establish such prejudice.

[¶23] The improper testimony consisted of part of a word -- "meth." Even if we accept that people often refer to methamphetamine as "meth," the improper comment consisted of only a single word during a two-day trial. There is no indication the prosecution intentionally violated the order in limine. To the contrary, the prosecutor stated she had instructed the witness not to mention the drugs or drug paraphernalia found during the search of Mr. Langley. Moreover, the district court gave a curative instruction immediately following the improper testimony. In accordance with Mr. Langley's request, the district court directed the jury to disregard Officer Patterson's answer without repeating the offending word. The jury was also instructed, both at the beginning of the trial and at the conclusion of the evidence, that it must not consider any evidence rejected by the district court. The jury is assumed to have followed the district court's instructions. *McGill*, ¶ 12, 357 P.3d at 1145; *Salinas*, ¶ 17, 380 P.3d at 650. *See also, Thomas v. State*, 2006 WY 34, ¶ 37, 131 P.3d 348, 358 (Wyo. 2006) ("We assume juries follow a court's curative instructions.").

[¶24] We have concluded in other cases that similar circumstances did not warrant a mistrial. In *Thomas*, ¶¶ 36-37, 131 P.3d at 358, we held a mistrial was unnecessary when the victim testified about the defendant's uncharged misconduct in violation of W.R.E. 404(b) ("[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith"). *Id.* "Any prejudicial effect of the testimony was mitigated by the court's actions in reining in the State and the victim" and giving the jury a limiting instruction immediately after the improper testimony. *Id.*, ¶ 37, 131 P.3d at 358. In *McGill*, ¶¶ 7-11, 357 P.3d at 1143-45, testimony from a law enforcement officer that an interview with a witness turned out better than he expected violated W.R.E. 701 (limiting opinion testimony by lay witnesses). A mistrial was not, however, required because the testimony was limited in scope and the district court "took appropriate steps to ameliorate the testimony's effect by striking the response and giving a cautionary instruction to the jury." *McGill*, ¶ 12, 357 P.3d at 1145.

[¶25] Furthermore, there is no reasonable possibility the verdict would have been more favorable to Mr. Langley had "meth" not been mentioned. *See Birch v. State*, 2018 WY 73, ¶ 18, 421 P.3d 528, 534-35 (Wyo. 2018) ("'Error is prejudicial if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had not been made.'" (quoting *Magnus v. State*, 2013 WY 13, ¶ 15, 293 P.3d 459, 465 (Wyo. 2013)) (other citation omitted). The record demonstrates the jury carefully analyzed the evidence. It acquitted Mr. Langley of aggravated burglary, and it convicted him of attempted aggravated robbery on the undisputed evidence he pointed the gun at the victim and demanded his car keys. *See* §§ 6-1-301(a), 6-2-401(a)(ii), (c)(ii). The district

court properly concluded the error was not so prejudicial that it denied Mr. Langley a fair trial.

## CONCLUSION

[¶26]  The district court did not commit judicial misconduct or deprive Mr. Langley of a fair trial by commenting on the foundation for admission of the gun.  The court also did not abuse its discretion by denying Mr. Langley's motion for a mistrial.  Affirmed.